**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: August 10 2012

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 10-34191 |
| | ) | |
| James L. Kohlenberg and | ) | Chapter 7 |
| Nicole L. Kohlenberg, | ) | |
| | ) | Adv. Pro. No. 10-3390 |
| Debtors. | ) | |
| | ) | Hon. Mary Ann Whipple |
| Bruce Comly French, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Johnson Law Group, | ) | |
| | ) | |
| Defendant. | ) | |

### PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

This adversary proceeding is before the court on Plaintiff's Motion for Default Judgement [Doc. # 7]. Plaintiff is the Trustee in the underlying Chapter 7 bankruptcy case of Debtors James L. Kohlenberg and Nicole L. Kohlenberg ("Debtors"). Defendant is an entity that agreed pre-petition to provide debt settlement services to Debtors. In his Complaint, Plaintiff alleges that Defendant failed to comply with the provisions relating to debt relief agencies set forth in the Bankruptcy Code at 11 U.S.C. § 526, as well as claims for breach of contract, unjust enrichment, and fraudulent misrepresentation. As discussed below, the court does not have authority to enter final judgment on the Complaint. The court will, therefore, submit

to the United States District Court the following as its proposed findings of fact and conclusions of law, recommending that judgment be entered in favor of Defendant and against Plaintiff on the Complaint.[1]

## PROCEDURAL BACKGROUND

On November 15, 2010, the Clerk issued a Summons and Notice of Pre-Trial Conference [Doc. # 5]. The return on service [Doc. # 6] shows that the Summons and Complaint were duly and properly served on Defendant, sent by certified mail to Defendant at its usual place of business in Las Vegas, Nevada. The summons required an answer or other response to the Complaint to be filed by December 15, 2010, and it scheduled a pretrial conference. On December 16, 2010, the court held the scheduled pre-trial conference. There was no appearance by or on behalf of Defendant and no answer or other response to Plaintiff's Complaint had been served and filed. The Clerk entered Defendant's default [Doc. # 14, 15] and Plaintiff accordingly filed a Motion for Default Judgment ("Motion"). [Doc. # 7].

The court scheduled a hearing on the Motion, and notice of the hearing was duly and properly served on Defendant. [Doc. ## 10, 11]. On January 18, 2011, the court held the hearing on the Motion. [Doc. # 17]. There was no appearance on behalf of Defendant and a review of the record shows no answer or other response to either the Complaint or to the Motion has been filed. Therefore, pursuant to Fed. R. Civ. P. 55, made applicable by Fed. R. Bankr. P. 7055, the court granted Plaintiff's Motion for Default Judgment. [Doc. # 19]. However, the court found that before a final judgment could be entered on the Complaint, a further and separate hearing was necessary to determine the truth of the averments of the Complaint that are set forth on information and belief[2] and to liquidate the damages claimed by Plaintiff for the estate. [Doc. #20]; *see* Fed. R. Bankr. P. 7055; Fed. R. Civ. P. 55(b)(2). The court, therefore, scheduled a further hearing on the Complaint and on Plaintiff's Motion for Default Judgment, and notice of the hearing was properly served on Defendant. [Doc. ## 20, 23]. The court held the hearing on March 29, 2011, at which Plaintiff offered testimony and other evidence in support of his claims in the Complaint. [Doc. # 28].

---

[1] On July 11, 2012, the court entered Tentative Proposed Findings of Fact and Conclusions of Law and granted Plaintiff until August 6, 2012, to file an amended complaint if he deemed it appropriate, absent which the Tentative Proposed Findings of Fact and Conclusions of Law would be entered as the court's Proposed Findings of Fact and Conclusions of Law. An amended complaint has not been filed.

[2] Although courts have permitted plaintiffs to aver "on information and belief" facts that they believe to be true but that lack evidentiary support at the time of pleading, such averments are generally allowed only when the facts that would support the allegations are peculiarly within the defendant's knowledge and control. *See, e.g., Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1224 (3d ed. 2004)); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1995)). In this case, Plaintiff's complaint includes numerous allegations made on information and belief that are not peculiarly within Defendant's knowledge. The court, therefore, conducted a hearing under Rule 55(b) of the Federal Rules of Civil Procedure in order to establish the truth of those allegations.

Thereafter, in light of the United States Supreme Court decision in *Stern v. Marshal*, 131 S. Ct. 2594 (2011), the court scheduled a further hearing to address the court's subject matter jurisdiction to enter a final judgment by default. [Doc. # 29]. However, the court granted Plaintiff's motion to vacate the hearing order and to instead permit him to file a memorandum addressing the court's constitutional authority under *Stern* to issue a final order in this proceeding. [Doc. ## 31, 32]. Plaintiff has filed the memorandum addressing the court's constitutional authority. [Doc. # 34].

## JURISDICTION AND AUTHORITY TO ENTER FINAL JUDGMENT[3]

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising under or related to a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. This court "may hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11, referred under [§ 157(a)], and may enter appropriate orders and judgments. . . ." 28 U.S.C. § 157(b)(1). However, as to "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," this court's role is more limited – it must submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment must be entered by the district judge, 28 U.S.C. § 157(c)(1), unless the parties consent to the entry of a final order or judgment by the bankruptcy judge, 28 U.S.C. § 157(c)(2).

Courts have recognized that the word "proceedings," as used in § 157(b), must refer to the specific causes of action and grounds for relief sought by a party, and not to the entire action. *See, e.g., Beneficial Nat'l Bank, USA v. Best Receptions Sys., Inc. (In re Best Reception Sys., Inc.)*, 220 B.R. 932, 945 (Bankr. E.D. Tenn. 1998) (citing *Ralls v. Docktor Pet Centers, Inc.*, 177 B.R. 420, 425 (D. Mass. 1995)); *Bliss Techs., Inc. v. HMI Indus., Inc. (In re Bliss Technologies, Inc.)*, 307 B.R. 598, 603 (Bankr. E.D. Mich. 2004); *Mirant Corp. v. Southern Co.*, 337 B.R. 107, 116 (N.D. Tex. 2006). Therefore, a bankruptcy court must examine each cause of action or ground for relief separately to determine if it is core or non-core. *Bliss Techs., Inc.*, 307 B.R. at 603. "The mere fact that a claim is brought ancillary to a proper bankruptcy claim does not render the former a core proceeding." *Best Receptions Sys., Inc.*, 220 B.R. at 945. A claim is a "core" proceeding, that is, it arises under title 11 or arises in a case under title 11, if it either invokes a substantive right created by federal bankruptcy law or could not exist outside of the bankruptcy. *Browning*

---

[3] On further consideration, as discussed below, the court finds that Plaintiff's claims do not raise a *Stern v. Marshall* issue. Rather, the court's authority to enter final judgment can be determined under § 157 and the Sixth Circuit's definition of "core proceeding" in *Browning v. Levy*, 283 F.3d 761, 773 (6th Cir. 2002).

*v. Levy*, 283 F.3d 761, 773 (6th Cir. 2002).

In this case, Plaintiff's claim brought under § 526, which sets forth certain restrictions on debt relief agencies and remedies for the failure to comply with its provisions, is a core proceeding as it involves substantive rights created by federal bankruptcy law. Plaintiff's remaining claims are prepetition state law claims for breach of contract, unjust enrichment and fraudulent misrepresentation that became property of the bankruptcy estate under 11 U.S.C. § 541(a)(1) when Debtors filed their Chapter 7 case. These claims are related to the bankruptcy case since any recovery would be an asset available for distribution by Plaintiff to creditors. *See Michigan Emp't Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co., Inc.),* 930 F.2d 1132, 1144 (6th Cir. 1991) (holding that a case is related to a bankruptcy case "if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."). However, the claims are not core as they do not invoke a substantive right created or determined by federal bankruptcy law, and they could have been brought in state court. *See, e.g., Loomis Elec., Inc. v. Lucerne Prod., Inc.*, 255 B.R. 381, 386 (N.D. Ohio 1998) (finding prepetition breach of contract and unjust enrichment claims were not core proceedings); *SAI Admin. Claim and Creditor Trust v. Benecke-Kalicko AG (In re SAI Holdings Ltd.)*, No. 06-33227, Adv. No. 08-3036, 2009 WL 161666, *6-9, 2009 Bankr. LEXIS 1523, *17-24 (Bankr. N.D. Ohio Feb. 27, 2009) (same); *Hankin v. Auxilliary of the Winsted Mem'l Hosp. (In re Winsted Mem'l Hosp.)*, 236 B.R. 556, 561 (Bankr. D. Conn. 1999) (finding unjust enrichment claim "clearly non-core"); *Marshall v. Mich. Dept. of Agriculture (In re Marshall)*, 118 B.R. 954, 963 (W.D. Mich. 1990) (finding breach of contract claim not a core proceeding); *Walker v. Commercial Credit Corp.*, 192 B.R. 260, 267 (M.D. Ala. 1996) (finding state fraud claim is not a core proceeding); *Coho Oil & Gas, Inc. v. Finley Res., Inc. (In re Coho Energy, Inc.)*, 309 B.R. 217, 222 (Bankr. N.D. Tex. 2004) (finding claims for pre-petition breaches of contracts and pre-petition tortious conduct were not core proceedings).

While the court has subject matter jurisdiction over Plaintiff's related but non-core claims, *see Stern v. Marshall*, 131 S. Ct. 2594, 2607 (2011) (explaining that § 157 "allocates the authority to enter final judgment between the bankruptcy court and the district court" but "does not implicate questions of subject matter jurisdiction"), it may not enter final judgment on such claims absent consent by the parties, 28 U.S.C. § 157(c)(2). There is no express consent by Defendants to the entry of final judgment by this court. And the court will not infer Defendant's consent from its default. Nor has Plaintiff consented to entry of final judgment on his related but non-core claims. Although he alleges, generally, in his Complaint that this is a core proceeding, in his memorandum addressing the court's authority to enter a final order on the

4

Complaint, Plaintiff states that his claims for breach of contract, unjust enrichment, and common law fraudulent misrepresentation "should be sent with recommendations to the District Judge." [Doc. # 34, p. 3].

Lacking the consent required under § 157(c)(2), and because of the interrelatedness of Plaintiff's core and non-core claims, in the interest of judicial efficiency and economy, the court will submit these proposed findings of fact and conclusions of law to the United States District Court for de novo review and entry of final judgment on all of Plaintiff's claims pursuant to 28 U.S.C. § 157(c)(1) and Federal Rule of Bankruptcy Procedure 9033. *Cf. Mirant Corp. v. Southern Co.*, 337 B.R. 107, 122 (N.D. Tex. 2006) (finding that withdrawal of reference of the entire adversary proceeding was warranted, notwithstanding that both core and non-core claims were asserted).

## DEFAULT JUDGMENT STANDARD

Default by a defendant does not automatically entitle a plaintiff to entry of a default judgment in plaintiff's favor. The court "must independently determine whether a plaintiff's pleaded allegations entitle the plaintiff to the relief being sought." *Gourlay v. Sallie Mae, Inc. (In re Gourlay)*, 465 B.R. 124, 127-28 (B.A.P. 6th Cir. 2012); *see Nickolas v. Thomas A. Boccio (In re Boccio)*, 281 B.R. 171, 176 (Bankr. E.D.N.Y. 2002) (entering default judgment in favor of plaintiff in part and in favor of defendant in part). In making this determination, a plaintiff's well-pleaded allegations of fact, other than those relating to damages, are deemed admitted. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006); *see* Fed. R. Civ. P. 8(b)(6); Fed. R. Bankr. P. 7008(a). However, legal conclusions are not admitted, and the court need not accept unwarranted factual inferences and conclusions as true. *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). The court may, at its discretion, conduct a hearing to establish the truth of any allegation and to determine damages. Fed. R. Civ. P. 55(b), Fed. R. Bankr. P. 7055; *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011). Where the claim sounds in fraud or where the allegations in the complaint are largely conclusory, the court must evaluate the evidence presented to assure that the plaintiff has presented a prima facie case. *Columbiana Cnty Sch. Emp. Credit Union, Inc. v. Cook (In re Cook)*, 342 B.R. 384 (Table), 2006 WL 908600, *3 (B.A.P. 6th Cir. 2006); *FCC Nat'l Bank v. Roberts (In re Roberts)*, 193 B.R. 828 (Bankr. W.D. Mich. 1996) (denying creditor's motion for default judgment where creditor failed to present evidence to establish the debtor's fraudulent intent).

## PROPOSED FINDINGS OF FACT

The following well-pleaded facts alleged in the Complaint are deemed admitted by Defendant's default. Plaintiff was appointed as Trustee in the underlying Chapter 7 bankruptcy case of James L. and Nicole L. Kohlenberg, who had previously retained the services of Defendant. [Doc. # 1, Complaint, ¶ 4]. Defendant Johnson Law Group of Las Vegas is a business purporting to offer debt relief and debt settlement services. [*Id.* at ¶ 5]. Defendant's fee structure for its services provides that 90% of its $5,690.25 creditor handling fee is earned before any debt settlements occur. [*Id.* at ¶ 16]. Defendant's contract for services to the Kohlenbergs provides that after the Kohlenbergs retained its services for twelve months, Defendant would prepare a bankruptcy petition to file *pro se* or, in lieu of preparing a petition, Defendant would refund the Kohlenbergs $500.00. [*Id.* at ¶ 24]. Defendant did not prepare a petition for the Kohlenbergs and did not refund them $500.00. [*Id.* at ¶ 25]. The Complaint's remaining allegations are made on information and belief or are conclusory and are not deemed admitted without supporting evidence.

At the further hearing on the motion for default judgment, Plaintiff offered as evidence the contract entered into on June 21, 2008, by the Kohlenbergs for Defendant's services, which is entitled Application for Debt Settlement ("Contract"), but which was not attached to, and incorporated into, the Complaint. [Pl. Ex. 1]. The court, therefore, considers the provisions of the Contract only to the extent that it is offered in support of an allegation in the Complaint. The Contract sets forth the specific services to be provided by Defendant and provides in relevant part as follows:

> a) CREDITOR COMMUNICATION AND NEGOTIATION. I understand that [Defendant] will contact my creditors, request that creditors contact [Defendant] rather than me, and attempt to reach a satisfactory settlement/or payment plan for each debt listed in Appendix A. . . . These services will only be provided in regard to my debts listed in Appendix A.
> . . . .
> (c) BANKRUPTCY. If I have participated in this debt settlement program and made all agreed fee payments for at least twelve months, and I thereafter elect[] to file a Bankruptcy, [Defendant] will prepare a Chapter 7 or Chapter 13 Bankruptcy petition for me to file "Pro Se" or "In Pro Per". . . . In lieu of preparing a "Pro Se" or "In Pro Per" Bankruptcy Petition, [Defendant] may, at its option, reduce Client's fee by $500.

[*Id.* at ¶ 1(a) and (c)]. Appendix A lists five credit card debts owed by Debtors. [*Id.,* attached Appendix A].

The Contract also sets forth the Kohlenbergs' duties that are required in order to permit settlement of their debts. Those duties include setting aside settlement funds according to a schedule set forth in Appendix A attached to the Contract. [*Id.* at ¶ 3(c)]. The Contract specifically provides that the

6

Kohlenbergs are "solely responsible to set aside the specific sum for the specified months." [*Id.*]. It further provides that the "the success of the program is dependant on [the Kohlenbergs'] commitment to retain stated sums for [Defendant] to facilitate settlements on [the Kohlenbergs'] behalf" and that their "failure to set aside the specified sums may hamper if not negate [Defendant's] ability to obtain settlement with a creditor" on their behalf. [*Id.*]. The Contract also specifically provides that "settlement will not be reached with a creditor until [the Kohlenbergs] have accumulated enough funds to make a lump sum payoff." [*Id.* at ¶ 4(e)].

The Kohlenbergs agreed to the following fees and payment for Defendant's services:

a) A Creditor Handling Fee of $5,690.25. This fee shall be earned according to the following schedule: (i) 30% (thirty percent) when [Defendant] has performed budget review, debt analysis and file setup; (ii) 30% (thirty percent) when [Defendant] has prepared and sent its initial correspondence to the creditors; (iii) 30% (thirty percent) when [Defendant] has been instructed by [the Kohlenbergs] to begin settlement on any of [their] accounts; and (iv) 10% (ten percent) when [the Kohlenbergs] have completed the program and all indebtedness identified on Appendix A has been settle [sic]. If [the Kohlenbergs] fail to complete the program, [they] will be entitled to a refund of all prepaid portions of this fee that are not considered earned according to the foregoing schedule.

b) A non-refundable Monthly Maintenance Fee of $40.00, beginning on the date stated in Appendix A, and continuing each month thereafter until [the Kohlenbergs] have completed the program.

[*Id.* at ¶ 2].

The Contract states that the Kohlenbergs understand that their accounts will become delinquent while participating in Defendant's program and that "unless accounts do become delinquent it is highly unlikely that any settlement for a substantial discount will occur." [*Id.* at ¶ 4(a)]. It also states that the Kohlenbergs "may continue to receive phone calls from creditors even after [Defendant] has notified the creditors not to contact [them]" and that "creditors may pursue any legal means available to them to collect a debt." [*Id.* at ¶4(c) and (d)]. Finally, the Contract provides that it "constitutes the entire agreement between the parties and cancels and supersedes all prior agreements, representations, statements, promises and understandings. . . with respect to the subject matter thereof." [*Id.* at ¶ 9].

At the hearing, Plaintiff also offered the testimony of Nicole Kohlenberg, which the court also considers only to the extent offered in support of an allegation in the Complaint. Ms. Kohlenberg testified that she contacted Defendant by telephone after seeing a commercial on television and looking online. Debtors were required to set up a monthly payment plan and make their first payment before an attorney

7

associated with Defendant would contact them. Ms. Kohlenberg testified that Defendant told Debtors that it would assist them in getting their debts paid off within three to five years and that it would negotiate with their creditors in order to accomplish this. Debtors stopped paying the credit card debt listed in Appendix A attached to the Contract as instructed by Defendant and, while in Defendant's program, continued to receive phone calls from their creditors. Ms. Kohlenberg also testified that when one agent of a creditor came to her door, she gave him Defendant's name and number to call. The agent later called her and reported that Defendant had not returned his calls.

Ms. Kohlenberg testified that her understanding of Defendant's fee schedule was that the Kohlenbergs were to pay Defendant "six hundred and some dollars" for three or four months, then "two hundred and some dollars" for fourteen months, and thereafter $40.00 per month, and that when their monthly payments were decreased, the Kohlenbergs were to "continue to act like it was a $600.00 payment and to put so much in a separate account" so that Defendant could negotiate their debt. Ms. Kohlenberg's understanding is consistent with the payment schedule set forth in Appendix A attached to the Contract. [*See id.* and Appendix A attached thereto]. Although Mr. Kohlenberg testified that it was his understanding that Defendant would set a portion of each payment aside for payment of their debt, the record is silent as to the basis for his understanding. There is no allegation, and the record is also silent, as to whether or not the Kohlenbergs actually set aside funds each month for the settlement of their debt. However, Ms. Kohlenberg testified that Defendant did successfully negotiate with one credit card creditor who accepted as payment in full a discounted payment that the Kohlenbergs provided from proceeds from the sale of their home.

After paying Defendant approximately $7,000.00, Ms. Kohlenberg contacted Defendant because she "wanted to learn more about filing bankruptcy." Defendant responded by giving her a phone number of an attorney to call in Columbus, Ohio. That attorney told her that his fee would be $1,000.00 to file their petition. On May 24, 2010, the Kohlenbergs received a letter from Defendant stating that the Kohlenbergs were no longer in its program. The Kohlenbergs ultimately paid $800.00 to a different attorney who filed their petition in the underlying Chapter 7 case on June 16, 2010. Defendant did not refund any portion of its fees paid by the Kohlenbergs.

## **PROPOSED CONCLUSIONS OF LAW**

### I. 11 U.S.C. § 526

Section 526 of the Bankruptcy Code sets forth certain restrictions on the conduct of debt relief agencies and provides a remedy for assisted persons where the debt relief agency "intentionally or negligently" failed to comply with its provisions or the provisions in § 527, which addresses disclosures that

a debt relief agency must make, or § 528, which addresses both the contract that a debt relief agency is required to execute with the assisted person and its advertisement of bankruptcy assistance services. Plaintiff's claim is brought under § 526(a)(3), which provides that a debt relief agency shall not "misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to . . .the services that such agency will provide to such person." 11 U.S.C. § 526(a)(3).

Sections 526, 527, and 528 of the Bankruptcy Code by their express terms apply only to "debt relief agencies," which are defined as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110 . . . ." 11 U.S.C. § 101(12A). A "bankruptcy petition preparer" is defined as "a person, other than an attorney for the debtor . . . who prepares for compensation a document for filing." 11 U.S.C. § 110(a)(1). Thus, the restrictions set forth in § 526 apply only to a person who for compensation provides bankruptcy assistance or prepares a document for filing in the bankruptcy case.

In this case, Plaintiff's Complaint includes no allegation that Defendant is a "debt relief agency." Plaintiff's allegation that Defendant "is a business purporting to offer debt relief and debt settlement services," without more, is insufficient. Paragraph 22 of the Complaint uses the term "debt relief agency." But the reference is in the context of stating what § 526 provides. As such it is a legal conclusion that is not treated as admitted on default. *Brophy*, 771 F. Supp. 2d at 544. There is no allegation that Defendant prepared any document for filing or provided any bankruptcy assistance to the Kohlenbergs. Rather, Plaintiff specifically alleges that Defendant did not prepare a petition for the Kohlenbergs. Moreover, Ms. Kohlenberg testified that when she asked to learn more about bankruptcy, she was simply given a number of an attorney to call. There is no evidence that the attorney was affiliated with Defendant. In any event, Plaintiff has failed to allege facts from which the court may infer that Defendant is a "debt relief agency." As such, Plaintiff is not entitled to the relief sought in his claim brought under § 526(a)(3).

## II. Breach of Contract

The essential elements of a breach of contract claim are: "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Jarupan v. Hanna*, 173 Ohio App.3d 284, 294 (2007). The averments in the Complaint that are deemed admitted show the existence of a contract between the Kohlenbergs and Defendant and show that the Contract required Defendant to either prepare a bankruptcy petition or refund the Kohlenbergs $500.00 after they had retained Defendant's services for twelve months. The averments deemed admitted also establish that Defendant neither prepared

9

a bankruptcy petition nor refunded the Kohlenbergs $500.00 and that its failure to do so caused the Kohlenbergs a loss as they had to pay an attorney $800 to prepare a petition for them. However, the Complaint includes no allegation from which the court can reasonably infer that the Kohlenbergs had retained Defendant's services for the twelve months required under the Contract before Defendant's duty under the Contract to prepare a petition or refund $500.00 would arise. Thus, Plaintiff has failed to allege performance under the Contract by the Kohlenbergs, which is an essential element of his breach of contract claim. As such, he is not entitled to relief on this claim.

### III. Unjust Enrichment

Unjust enrichment is an equitable theory of recovery that provides that a person should not be allowed to retain a benefit that would result in inequity and injustice. *Hummel v. Hummel*, 133 Ohio St. 520, 528 (1938); *Norton v. City of Galion*, 60 Ohio App. 3d 109, 110 (1989). However, when the subject of the claim is governed by an express contract, the doctrine of unjust enrichment does not apply. *Pawlus v. Bartrug*, 109 Ohio App. 3d 796, 800 (1995); *Corbin v. Dailey,* No. 08AP-802, 2009 WL 491739, *4 (Ohio App. Feb. 26, 2009) (citing *Hummel v. Hummel*, 133 Ohio St. 520, 525-28 (1938) and stating that it is an accurate statement of the law that there can be no claim for unjust enrichment if a contract actually existed between the parties and "it is an equitable remedy applicable only when the court finds there is no contract").

In this case, Plaintiff alleges the existence of a contract that governs the subject of his unjust enrichment claim and that allegation is deemed admitted. While an unjust enrichment claim may be pled in the alternative when the existence of an express contract is in dispute, there is no dispute where the allegation is deemed admitted. As such, Plaintiff is not entitled to relief on his unjust enrichment claim.

### IV. Fraudulent Misrepresentation

The elements of fraudulent misrepresentation claim are "(1) a representation or, when there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that such knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) with justifiable reliance on the misrepresentation or concealment, and (6) an injury proximately caused by that reliance." *Deutsche Bank Nat'l Trust Co. v. Pevarski*, 187 Ohio App. 3d 455, 471 (2010) (citing *Gaines v. Preterm-Cleveland, Inc.,* 33 Ohio St.3d 54, 55 (1987)). While a fraudulent misrepresentation claim cannot be predicated upon promises or representations relating to future actions or conduct, a person who does not intend to perform a contract from its inception has knowingly made a false representation. *Martin v. Ohio State Univ. Found.*,

10

139 Ohio App. 3d 89, 98 (2000).

In his Complaint, Plaintiff alleges upon information and belief, that the "contract between the parties was styled as an 'Application for Debt Settlement,' misrepresenting the binding contractual relationship that [Defendant] intended to establish." While the Contract so styled was offered at the hearing into evidence, there is no allegation that the Kohlenbergs relied upon such representation or that they suffered any injury as a result thereof.

Upon information and belief, Plaintiff also alleges the following:

1. Defendant "misrepresented the services that it would provide for the Kohlenbergs;" [Doc. # 1, Complaint, ¶ 10];

2. Defendant "directly represented that it would be in active negotiations with creditors but could make 'no guarantees' that settlement would occur," [*Id.* at ¶ 12];

3. Defendant "did not reach a settlement agreement on a single one of the Kohlenberg family debts," [*Id.* at ¶ 13]; and

4. Defendant "did not actively negotiate with all of the Kohlenbergs' creditors zealously, but rather merely sent the creditors form letters saying it would be negotiating at a later date," [*Id.* at ¶ 14].

None of the testimony and evidence offered at the hearing show that any material misrepresentation was actually made by Defendant. Initially, the court notes that the testimony and evidence offered at the hearing contradicts Plaintiff's allegation that Defendant did not reach a settlement agreement on any of the Kohlenbergs' debts. Ms. Kohlenberg testified that Defendant did, in fact, settle one of the five credit card debts that were the subject of their Contract.

That Defendant did not negotiate with *all* of the Kohlenbergs' creditors does not support a reasonable inference that Defendant misrepresented the services that it would provide. The Contract required the Kohlenbergs to provide Defendant with all information necessary for it to provide its services. [Pl. Ex. 1, ¶ 3(a)]. It states that settlement with a creditor could only occur if the Kohlenbergs accumulated funds for a lump sum payoff and that they were "solely responsible" to set aside funds for such purpose. [*Id.* at ¶ 3(c) and 4(e)]. The Contract further states that the Kohlenbergs' failure to set aside specified sums "may hamper if not negate [Defendant's] ability to obtain settlement with a creditor. . . ." [*Id.*]. These provisions make clear that Defendant would negotiate with creditors only if funds were available for use in settling the debts owed to those creditors. Ms. Kohlenberg testified she understood that she and her husband were to set aside specified funds as stated in the Contract. While Defendant settled one credit card debt, that settlement was funded by proceeds obtained by the Kohlenbergs on the sale of their home. There

is no allegation and no testimony that the Kohlenbergs did, in fact, set aside any other funds for use by Defendant in settling their other credit card debts or that they informed Defendant at any time that they had accumulated funds for such use.

Furthermore, Plaintiff's allegations of misrepresentation are representations relating to future conduct, i.e., services to be performed by Defendant that cannot support his fraudulent misrepresentation claim unless Defendant did not intend to perform the Contract from its inception. *Martin,* 139 Ohio App. 3d at 98. To that end, Plaintiff alleges that Defendant's fee structure "demonstrates implicitly that [Defendant] had little intention of actually settling debts, the service for which all of its fees were solicited under the guise of." [Doc. # 1, Complaint, ¶ 15]. The court finds this conclusory allegation unwarranted. *Brophy*, 771 F. Supp. 2d at 544 (stating that the court need not accept unwarranted factual inferences and conclusions as true). While Defendant's fee structure is clearly designed to ensure that Defendant's fee is substantially paid before it begins negotiating with creditors, it does not imply a lack of intent to perform under the Contract. Rather, Ms. Kohlenberg's testimony indicates that when settlement funds were available, Defendant did negotiate with the Kohlenbergs' creditors, settling one of the debts for less than was owed.

For the foregoing reasons, the court concludes that Plaintiff has failed to properly allege all of the elements of a fraudulent misrepresentation claim, and specifically, that a false representation was even made by Defendant. As such, he is not entitled to the relief sought under that claim.

## CONCLUSION

For the foregoing reasons, the court recommends that judgment on the Complaint be entered in favor of Defendant and against Plaintiff . The court submits these proposed findings of fact and conclusions of law to the United States District Court.

## NOTICE

Pursuant to Rule 9033 of the Federal Rules of Bankruptcy Procedure, the parties have **14 days** after being served with a copy of these proposed findings of fact and conclusions of law to file their written objections with the Bankruptcy Clerk of Courts. A party may respond to an objection within fourteen days after the objection has been served. Failure to file objections within the specified time may constitute a waiver of the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

###